## HANNAH M. TREGO v. J. N. PIERCE.

ERROR TO THE COURT OF COMMON PLEAS OF CHESTER COUNTY.

Argued February 8, 1888—Decided March 5, 1888.

1. The object of the act of March 11, 1842, P. L. 62, relating to the duties of fence viewers, is to provide a summary remedy to keep partition fences from going into dilapidation.  It is error, therefore, in an action to recover contribution for the rebuilding of such a fence, to

Statement of Facts.

admit evidence that the fence was not rebuilt upon the true line and to charge the jury that the plaintiff cannot recover if they so find.

2. Where, in such an action, it appeared that after a report of fence viewers the defendant rebuilt his portion of the fence in substantial accordance therewith, and that the plaintiff, dissatisfied with the style and kind adopted, of her own motion and upon her own view took it down and built a new one in its place, she was not entitled to recover the cost thereof from the defendant.

3. This court will not reverse for every error that falls into a cause in the hurry of a jury trial; some substantial injury must have been the actual or probable result of such error, to justify the disturbance of the judgment: Per Mr. Justice PAXSON.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 248 January Term 1887, Sup. Ct.; court below, No. 124 January Term 1886, C. P.

The cause in the court below was an appeal by the plaintiff from the judgment of a justice of the peace in an action by Hannah M. Trego against Joshua N. Pierce, to recover contribution to the cost of a division fence between the lots of the respective parties. The facts sufficiently appear from the charge of the court, FUTHEY, P. J., at the trial on November 10, 1886, which was as follows:

The parties to this action, Hannah M. Trego and Joshua N. Pierce, are the owners of adjoining properties, separated by a fence, in the borough of West Chester, fronting on High street and running back two hundred feet to an alley.

The plaintiff recently improved her property, by tearing down the old houses and building new houses. She also erected a new fence between the properties, extending about half the distance back to the alley, and called upon the fence viewers, the auditors of the borough of West Chester, to view the half of the fence extending to the alley from where the fence thus erected terminated. . . . . .

The notice to the auditors was given in accordance with an act of assembly passed in 1842, P. L. 62, which provides that the fence viewers may be called upon to view any line fence between adjoining owners and make report thereon. The act of assembly originally made this the duty of township auditors, but by a supplemental act of March 3, 1847, P. L. 200, it was extended to borough auditors. . . . .

In pursuance of the request of the plaintiff, the fence viewers examined the fence in controversy, the defendant having been notified to be present, and made the following report:—

The undersigned auditors and fence viewers of the borough of West Chester, having viewed the fence between the adjoining properties of Hannah M. Trego and Joshua N. Pierce, situate on South High street, in said borough, find that about one half of the boundary fence, in the neighborhood of 100 feet, has recently been erected by Hannah M. Trego of new material; that the remaining portion of the fence, which is likewise about 100 feet in length, is insufficient in their judgment as a yard inclosure; and that they agree that it is the place of Joshua N. Pierce to erect in its stead a suitable fence, upon which they estimate the cost of $35.

The fence viewers thus found insufficient the portion of the fence in controversy, and that it was the duty of the defendant to build a suitable fence. . . . .

It was therefore the duty of Mr. Pierce, under the report of the viewers, to repair the fence and put it in proper condition. Mr. Pierce alleges that, upon the report of the viewers, he proceeded to put the fence in proper condition; that he made it a good, substantial fence, and suitable to the purpose for which it was required.

[If the fence, as repaired by the defendant, was a good and substantial fence, that is all the fence law requires. The law does not require that a tight board fence shall be erected. If the party who calls out the fence viewers desires a fence erected by his neighbor upon a portion of the line better or different from that which it occupies, and of a different character, he must erect it at his own expense. He can only require his neighbor, whose duty it is to repair and keep in order part of a line fence, to build or maintain a good, substantial fence. It may be built of rails, boards, slats, boards running lengthwise, or palings. It is immaterial how it is built, so that it is a good and substantial fence between the parties.] [10]

If the defendant, upon the report of the viewers, put the fence in proper condition, and made it a good, substantial fence, then he complied with the law, and the plaintiff who owned the other half of the fence and called out the fence viewers, could have no further remedy. Even though the fence may not

Charge of Court below.

have been as fanciful as the plaintiff desired, the defendant would have performed his duty, and the plaintiff would not be at liberty to charge him with the cost of a fence of a different character than that which he erected. . . . .

This brings you to the consideration of another point which has been raised in this case. The character of fence referred to by the act of assembly is the boundary fence between owners; that is, where two parties own improved lands adjacent to each other, and the boundary fence between them is a common fence. If this fence in controversy had been put where the old fence was, this question would not have arisen. There would then have been simply the two questions, whether the fence as repaired by Mr. Pierce was sufficient; and, if not, the right of the plaintiff to put it in proper condition with reasonable cost.

It appears, however, that the new fence was not erected by the plaintiff where the old fence stood. The testimony upon this point, which seems to be undisputed, is that at the alley where the fence terminated, the fence was some distance from the old fence. The witnesses do not agree precisely as to the distance, but it seems probable that it was from six inches, half way along the boundary between High street and the alley, to eighteen inches at the alley, further north than where the old fence was. The witnesses speak of the old post holes being on the south side of where the new fence was, and that they were visible there after the new fence was erected, thus showing that the new fence had been erected by the plaintiff, on that part of the lot at least, north of where the old fence was.

If the new fence was erected upon the boundary line between the parties, even although it was not on the site of the old fence, the plaintiff would be entitled to recover. She had a right to erect the fence upon what was the actual or legal line between herself and the defendant. The question is whether she erected it upon the boundary line.

[What is the evidence that the new fence was erected on the boundary between these parties? There is testimony that a surveyor, engaged presumably by the plaintiff in this case, examined the ground and made a mark to which the fence was built; but he was not called as a witness, and there is no evidence as to whether the mark made by him was the line between the parties.][14]

In the absence of any evidence showing that the new fence was erected on the actual line, you must examine the evidence as to the monuments and boundaries, for the purpose of ascertaining where the line was. It is in testimony that the old fence and its predecessors had remained on that site for a very long series of years. In the absence of anything to the contrary, the law presumes that a fence of long standing between parties marks the line between their properties, and is to be taken as the line whether called for in their deeds or not. If the parties have lived up to and recognized a fence upon the ground as the boundary fence between their respective properties, in the absence of anything showing the contrary, that fence must be taken as the boundary fence between the parties.

If you find, as the testimony seems to indicate, that this old fence had been there for a long series of years, twenty-one years and upwards, each living up to that fence uninterruptedly, each having adverse possession of his or her own side of that fence, then the fence, so far as this case is concerned, would mark the line between these parties; and if the plaintiff built her fence on other ground than on the boundary thus marked, she built it where she had no right to build it.

In a case of this kind the line between the parties is not determined, as that question is settled in another proceeding; but where the fence has been erected on different ground than where the old fence was built, it is necessary to determine whether there is any evidence showing that the party had a right to erect the fence upon different ground. [I see no evidence in this case to warrant the jury in coming to the conclusion that the boundary between these parties was other than that which was marked by the fence that stood there for a long period of time],[16] certainly, according to the testimony, exceeding twenty-one years.

It is contended by the plaintiff, however, that the defendant recognized the ground on which the fence was erected as the line between their properties. Even although a fence may have stood at one place for a long series of years, there is nothing to prevent parties from agreeing that the line is in a different place, or that it shall be established at a different place from that indicated by the monuments on the ground.

Charge of Court below.

It is said that the plaintiff erected the first half of the fence next to High street, that Mr. Pierce was there at least part of * the time, when the surveyor was there, and made no objection to it. But is that fact sufficient to hold Mr. Pierce to such a new line, or to a line different from that which was upon the ground as the line between the parties? If a surveyor is called, and it is agreed that the line. he surveys shall be the line between the parties, then they are bound by his survey. [Is it the fact in this case, that a surveyor came there, at the instance of Miss Trego, and that Mr. Pierce happened to be there a part of the time, without making any measurements, examining deeds, or lines, and without having the time necessary to consent to a line different from that which would seem to be indicated by the marks upon the ground, and thus become bound by the establishment of the line. That is the question for your determination, but I submit that the facts in the case hardly warrant the conclusion that Mr. Pierce deliberately agreed that the place where this fence was subsequently erected by Miss Trego should be considered as the boundary line between the parties.][15] . . . .

I do not refer to the little mistakes that are likely to be made in erecting a fence, a trifling variance one way or the other. In this case, there is a marked difference between where the fence is erected and where it formerly stood, and it is so marked as to leave no room for any question but that it was a departure from where it had been. Indeed, there is no dispute that it was erected upon this ground in pursuance of some information which had been given, it is said, by Mr. Lightfoot, who has not been, however, called as a witness in the case.

[If the defendant did not agree upon the ground where the new fence was erected as the boundary line between the parties, then the old fence marked the boundary between the properties, and the plaintiff, cannot recover in this action, even although the fence might not have been properly repaired by the defendant, and she might have had a right to erect it and charge the defendant with its cost, if she chose to vary the fence and not put it where it had been formerly erected.][11] She would not only be a trespasser, but would be seeking to make the defendant pay for putting a fence upon his ground.

These are the points this case presents, and which I have endeavored to explain to you. Cases of this character are very rare in courts of justice, and therefore the subject is not familiar to juries, nor probably to lawyers. I have therefore endeavored to explain the matter more at length than I would have otherwise deemed necessary.

[The points that arise in the case, are, first, whether the defendant repaired his fence, and put it in such condition as I have described. If he did, the plaintiff cannot recover. If, however, the defendant neglected to put it in proper condition after the report of the viewers, the plaintiff had a right to repair or rebuild the fence, as the jury may find necessary, and charge the defendant with the cost of it, provided she built the fence where it was before. As a matter of fact, she built the fence on a different site, and her right to build it there depends upon whether that was the line between the parties.] [12]

[I instruct you that there is no evidence showing the new site was the actual line between the parties, so far as any survey or any marks upon the ground are concerned. The presumption would be that where the fence stood before for a long series of years, was the boundary line between the parties. The plaintiff had no right to erect the fence somewhere else, unless the defendant agreed that that should be the line between them. If the jury find it was not thus agreed, that, although the defendant may have been there a part of the time the surveyor was there, and may have seen this fence at the other end, yet did not agree that the line was different from where it was marked by the monuments upon the ground, the line would be where the old fence ran, and the fence not being erected on that line, the plaintiff cannot recover.] [13]

I have been requested by the plaintiff to instruct you upon the following points :

1. If the plaintiff endeavored to put the fence in question on what she had reason to believe was the boundary line, the fence was put at the proper place for the purpose of this trial. The question as to where the line actually is, is not for the jury to determine.

Answer : I have already answered this point in the charge, and do not think I can make the law any clearer.[7]

2. If the jury believe the evidence, that the east half of the

Arguments.

fence, beginning on High street, erected by the plaintiff as her part of the fence, was erected to a division line without objection by the defendant, the plaintiff was justified in using that as the division line by which, when extended, to erect the other half of the division fence.

3. If the jury believe that the surveyor marked the division line without objection by the defendant to which the fence was erected, it was proper for the plaintiff to use that as the division line.

Answer: I have answered these points by what I have said in reference to the testimony as to any agreement between the parties, and do not think it necessary to give you further instructions.[8]

The verdict of the jury was for the defendant. Judgment being entered, the plaintiff took this writ, assigning for error inter alia:

7–8. The answers to the plaintiff's points.[7] [8]

10–16. The parts of the charge embraced in [ ][10 to 16]

*Mr. A. Wanger*, for the plaintiff in error:

1. By the charge of the court below, the jury were made to believe that the important question in the cause was the true line between the parties. The line was not a question. If there be in fact a partition fence, the duty of contribution to maintain it exists, and neither party can excuse himself by alleging, whether sincerely or not, that the line is in dispute: Stephens v. Shriver, 25 Pa. 78; Tyler on Boundaries, 442; Stallcup v. Bradley, 3 Cold. 406; 3 Wait's Act. & Def. 333; Myers v. Dodd, 68 Amer. D. 624, n. 631.

2. It is the right of either party to have a partition fence. The act of 1700, 1 Sm. L. 13, provides for a fence close at the bottom. The act of March 11, 1842, P. L. 62, contemplates the same character of fence, and its provisions are extended to boroughs by § 10, act of March 3, 1847, P. L. 200.

3. The erection of half the fence by the plaintiff was an expense incurred, and that binds the defendant in the location as well as the character of the fence, and is a subject for an irrevocable agreement: Bland v. Umstead, 23 Pa. 316; Milligan v. Wehinger, 68 Pa. 235; York v. Davis, 11 N. H. 241; 3 Wait's Act. & Def. 333. The view and report of the fence

viewers is final: Evans v. Jayne, 23 Pa. 34; Godshall v. Mariam, 1 Binn. 352.

3. We submit that the kind of fence for this place was a tight board fence, and the court should so have instructed the jury. A "good, substantial fence" was not enough; the court should have said, "a tight, close fence of reasonable height."

*Mr. Wm. M. Hayes*, for the defendant in error, was not heard.

OPINION, MR. JUSTICE PAXSON:

This case comes up bristling with exceptions, and a paper book containing seventy-eight pages. It involves the sum of $35, the cost of a partition fence.

The plaintiff, being of opinion that the line fence between her property and that of the defendant was insufficient, applied to the fence viewers to examine the same and report upon its sufficiency and the cost of rebuilding it. The fence viewers found that 100 feet of this fence had been erected by the plaintiff of new material; that the remaining 100 feet of fence was insufficient as a yard inclosure, and that it was the duty of the defendant to erect in its stead "a suitable fence, upon which they estimate the cost at $35." Whereupon the defendant proceeded to erect what he claimed to be a sufficient fence, and a compliance with the report of the viewers. It did not satisfy the plaintiff, however, and she proceeded to remove it and erect a new fence in lieu thereof, of a more expensive character. She then brought this suit to recover the cost of it.

It was alleged and the fact appears to be, that in erecting the fence the plaintiff moved it about six inches at one end and sixteen at the other end, from the line where it had stood for many years. The defendant contends that this was an encroachment upon his land, and much of the time upon the trial in the court below was occupied by this contention. This portion of the time would appear to have been wasted under the ruling in the case of Stevens v. Shriver, 25 Pa. 78, where it was said by LOWRIE, J.: "It is not at all necessary that partition fences should go to ruin because of the owners being in

litigation about their lines: indeed, this could only add to their difficulties. If there be in fact a partition fence, the duty of contribution to maintain it exists, and neither party can excuse himself from this duty by alleging, whether sincerely or falsely, that the line is in dispute; and the law relating to fences. contemplates no such mode of suspending the remedy which it provides . . . . . If the line needs correction, let it be made: and then it is easy to set the fence right." In that case the plaintiff below built the fence, but removed it from the foundation on which it had stood many years, westward, about a rod more or less, into the field of Stephens, the defendant below, and took from Stephens' field a rod of land in breadth and sixty rods in length, and a row of cherry trees. The parties differed as to the lines and corners. The claim was for the cost of one half the fence, and was sustained by the court below and here.

We think it was error, therefore, to charge the jury that the plaintiff could not recover in case they found that she had moved the location of the fence, and the evidence upon this point should have been excluded. Boundary lines cannot be established in this form of proceeding. The object of the act of assembly in regard to fence views is to provide a summary remedy to keep partition fences from going into dilapidation. Disputed questions as to lines can be settled afterwards. This was manifestly a line fence in fact; whether it was erected upon precisely the true line, is a question foreign to this proceeding.

We do not reverse, however, for every trifling error that creeps into a cause in the hurry of a trial before a jury. Some substantial injury must have been the actual or probable result of such error to justify us in disturbing the judgment.

Had the defendant refused to erect this fence as required by the fence viewers, the plaintiff would have been justified in erecting it herself and charging him with the cost. Such is not the case. The defendant complied, as he alleges, substantially, with the report of viewers, and it is clear that the fence erected by him was sufficient, though not perhaps as ornamental or durable as the plaintiff desired. Of her own motion, and upon her own view, she took it down and erected a new one in its place. She made herself the judge of its sufficiency and demolished it. This perhaps she might do if she preferred to build a better and more attractive looking

fence at her own expense, but she cannot thus arbitrarily throw the cost of it upon the defendant.

As she is not entitled to recover, the errors referred to did her no harm. The judgment therefore must be

Affirmed.